# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that New York Civil Rights Law § 70-a ("§ 70-a") is unconstitutional on its face and as applied to him, particularly when invoked in response to prior federal court actions, as well as inapplicable even under its own terms. Section 70-a, part of New York's purported anti-SLAPP (Strategic Lawsuits Against Public Participation) framework, permits defendants in certain actions to recover attorney's fees, compensatory damages, and punitive damages from plaintiffs who file lawsuits deemed to lack substantial basis or motivated by improper purposes.

This provision violates the First Amendment by burdening and chilling the right to petition the government for redress of grievances, including the fundamental right to access courts through filing complaints. It also contravenes the Supremacy Clause and the Rules Enabling Act, 28 U.S.C. § 2072, by undermining federal procedural rules in actions arising from dismissed federal lawsuits. Further, it offends the Erie doctrine by imposing disparate substantive and procedural rules based on the forum of the prior action and the subsequent claim. Finally, § 70-a engages in a form of reverse commandeering, forcing federal courts and plaintiffs to adhere to state-mandated fee-shifting and tort-like remedies for inherently procedural matters. This memorandum analyzes the statute's remedies under subsections (1)(a)-(c) separately. This action also underscores the societal value of defamation actions, as manifest by even New York's recognition of defamation *per se* allowing for nominal damages, which promote truth-seeking through the somber and meticulous standards according to rules of evidence in a judicial setting even when there is no direct economic value to the truth. Declaratory relief is warranted to prevent ongoing and imminent constitutional harms, among other harms.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party may not rely on mere conclusory allegations, speculation, or unsubstantiated assertions to defeat summary judgment; instead, it must set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Under the Declaratory Judgment Act, federal courts may declare the rights and legal relations of parties in cases of actual controversy. 28 U.S.C. § 2201. A declaratory judgment is appropriate where it will serve a useful purpose in clarifying legal relations and afford relief from uncertainty. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). Facial challenges to statutes require showing no set of circumstances under which the law would be valid, *United States v. Salerno*, 481 U.S. 739, 745 (1987), while as-applied challenges focus on specific applications. Here, Plaintiff satisfies both, as § 70-a inherently burdens constitutional rights and is invalid when applied to federal actions for structural constitutional reasons. Section 70-a is also not applicable even under its own terms according to facts already established and events that have already transpired relating to the dismissal of *Rapaport v. Finkelman* 24-cv-5942(JGLC)(SDNY).

The plaintiff has been repeatedly threatened with the bringing of claims against him under to 70-a. Since the dismissal with prejudice of all claims of the related action Finkelman I there remains no

further transactions or occurrences which may affect the actual controversy already in existence arising from § 70-a, even as understood on its own terms.

## ARGUMENT

A. Section 70-a Violates the First Amendment As Incorporated By The Fourteenth Amendment by Burdening and Chilling the Right to Petition the Government, Including Access to Courts

The First Amendment provides that "Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances." U.S. Const. amend. I. This right encompasses access to courts for filing lawsuits, as judicial redress is a core form of petitioning, and has been incorporated against the states through the Fourteenth Amendment U.S. Const. amend. XIV. The Supreme Court has long recognized that the Petition Clause protects the ability to seek judicial remedies without undue interference, see *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (filing a lawsuit is "a form of petitioning activity protected by the First Amendment"), and extends to civil actions, including defamation suits. Section 70-a burdens this right by imposing financial penalties on plaintiffs who file actions later deemed insubstantial or motivated by harassment, even if filed in good faith as understood to apply to any other action. This creates a chilling effect, deterring individuals from seeking redress for fear of retaliatory claims. In *NAACP v. Button*, 371 U.S. 415 (1963), the Supreme Court held that litigation is a protected form of political expression and association, in response to Virginia's creation of substantive remedies against attorneys or other backers of litigation to benefit indigent civil rights plaintiffs through the regulation of attorney solicitation and ethics rules. In *Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217 (1967) the Supreme Court balanced Illinois' interest in maintaining high standards of legal ethics against union workers' access to petition state or federal courts, and extended *Button* to non-religious and non-political petitions as supported by the reasoning of *Thomas v. Collins*, 323 U.S. 516, 531 (1945): "Great secular causes, with small ones, are guarded. The grievances for redress of which the right of petition was insured, and with it the right

of assembly, are not solely religious or political ones." On the purely economic side of the spectrum, even antitrust complaints have benefited from Petition Clause protection "Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transp. Co. v. Trucking Unlimited*, 404 US 508, 510 (1972).

Unlike content-neutral regulations, § 70-a targets speech and petitioning related to "public petition and participation" defined broadly in the companion § 76-a to include matters of public interest. This is not content-neutral because it discriminates based on the subject matter of the lawsuit (e.g., favoring defenses against public-interest claims over others) thus triggering strict scrutiny. See *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (laws are content-based if they draw distinctions based on communicative content). Under strict scrutiny, § 70-a fails, as less restrictive means exist to deter frivolous suits, such as FRCP 11 sanctions or state equivalents which clearly satisfy all other cases, without broadly chilling access. Analyzing the remedies separately underscores these violations:

1. Subsection (1)(a): Attorney's Fees. This mandatory fee-shifting for actions "without a substantial basis in fact and law" is not content-neutral, as it applies only to defamation actions involving matters of public interest. It chills petitioning by imposing asymmetric risks—plaintiffs face fees upon dismissal, while defendants do not—discouraging filings on public matters. This burdens the right to petition more than necessary, even failing intermediate scrutiny applicable to some petition regulations. See *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011) (petition rights subject to balancing but protected against undue burdens). Since the Supreme Court has rejected that newspapers, publishers or broadcasters have a duty to provide individuals with access, space or time to counter speech made against them, petitioners as to public matters cannot be forced into the same position to bear the burden of counter-petitioners under the First Amendment *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241; *Pacific Gas & Electric v. Public Utilities Commission*, 475 US 1 (1986).

2. Subsection (1)(b): Compensatory Damages. Requiring proof of 'harassing, intimidating, punishing or otherwise maliciously inhibiting" free exercise, this creates a new tort-like claim tied to

the content of the petition (i.e., lawsuits on public issues). It is content-based, targeting motives in public discourse, and chills by allowing damages for subjective intent, even if the suit has merit. This violates the Petition Clause, as it penalizes the act of filing based on impossibly vague perceived purpose see *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 533 (2002) (retaliatory penalties on lawsuits chill access).

      3. Subsection (1)(c): Punitive Damages. Reserved for actions with the "sole purpose" of harassment, this is the most punitive, imposing exemplary damages based on content-specific motives. It fails content-neutrality and strict scrutiny, as it deters legitimate petitions by threatening severe financial ruin for filings later deemed solely malicious, without adequate safeguards. This exacerbates chilling effects, particularly for resource-limited plaintiffs such as those who are unable to obtain regular employment as a result of the defamations perpetrated against them, like this plaintiff. Overall, § 70-a's remedies disproportionately burden the right to petition, rendering the statute unconstitutional on its face.

      Put simply, New York has expanded protection for speech and press activities, which already enjoy significant protection under the First Amendment as a matter of federal constitutional law, to such an extreme and novel extent that it now violates the First Amendment Petition Clause protections, and places a dangerous and unconstitutional moat around the courthouse for plaintiffs.

B. <u>Section 70-a is Unconstitutional When Applied to Claims Arising from Prior Federal Actions Under the Supremacy Clause and Rules Enabling Act</u>

When § 70-a is invoked based on a dismissed federal lawsuit, it conflicts with federal law, violating the Supremacy Clause, U.S. Const. art. VI, cl. 2. The Rules Enabling Act empowers the Supreme Court to prescribe federal procedural rules, which govern in federal courts 28 U.S.C. § 2072. Federal Rules of Civil Procedure (FRCP), including Rule 11 (sanctions for frivolous filings) Rule 12

dismissal motions as well as exclusively control fee awards and remedies in federal actions. Allowing § 70-a to impose state remedies post-federal dismissal supplants these rules, as state law cannot alter federal procedural outcomes. For instance, if a federal defamation suit is dismissed under FRCP 12(b)(6), § 70-a's fee-shifting or damages claims in state court effectively reviews and penalizes the federal proceeding, contravening supremacy. See *Testa v. Katt*, 330 U.S. 386, 389 (1947) (state courts must enforce federal law, but cannot undermine it). This application is preempted, as it frustrates federal procedural uniformity.

By creating a new state statutory claim or tort, New York has attempted to supplant federal procedural norms, and in so doing threatens every aspect of the independent operation of the federal judiciary as to both procedural and substantive matters. For example, if New York or any other state were dissatisfied by any other procedural rule, such as the standards for stating a claim or for serving a defendant with a complaint, it could create a state substantive remedy like 70-a and circumvent *Erie*, as well as chill access to the federal courts. In an example of the former, a state with an inclination against dismissing complaints on "plausibility" grounds as established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 US 662 (2009) and a preference for the earlier "no set of facts" *Conley v. Gibson*, 355 US 41 (1957) approach, could create a substantive state law claim equal to the entirety of any claim dismissed, with proof of the prior dismissal per 12(b)(6) plausibility as the only allegation required, and then have that substantive claims win a slam-dunk in either state or federal court. Clearly this would have a chilling effect on defendants raising 12(b)(6) motions in federal court. With regards to service of process, a state insisting on in-hand personal delivery for the protection of defendants could create a substantive cause of action against any person serving a federal complaint on a defendant "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there" per FRCP 4(e)(2)(B), equal to the amount in controversy of that case plus an additional punitive amount.

C. <u>Section 70-a Violates the Erie Doctrine by Creating Disparate Procedural and Substantive Rules</u>

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts in diversity apply state substantive law but federal procedural rules. Anti-SLAPP laws like § 70-a attempt to improperly straddle this line, and their applicability in federal court has not been endorsed by any binding authority. Section 70-a creates forum-shopping incentives: if a prior action is dismissed in federal court (under FRCP), subsequent § 70-a claims in state court impose state remedies unavailable federally, violating Erie's twin aims of uniformity and discouraging forum shopping. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Moreover, § 70-a invents a "substantive tort" for procedural dismissals (e.g., fee-shifting as a right of action), but applies differently based on prior forum—federal dismissals trigger state penalties without federal equivalents, leading to inconsistent outcomes. This offends Erie by inseparably mixing federal and state substance and procedure at various steps of litigation, and creating different substantive criteria for 70-a claim defendants depending on the prior procedures applied in the original defamation action. Consider for example 70-a's explicit reference to specific state procedures unavailable in federal court "including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules" which represent a balancing of interests to increase efficiency for defendants, while also allowing limited discovery to plaintiffs, which is generally unavailable in federal court.

New York is attempting to use *Erie* and its progeny in order to destroy the fundamental equilibrium established by *Erie* and the Federal Rules of Civil Procedure, both products of 1938. Thus, in examining the original meaning and purpose of the doctrine, it may be necessary to violate it in a small and superficial way by foreclosing a constitutionally problematic and underhanded attempt to circumvent the independence of the federal judiciary, in order to save the whole doctrine from being supplanted by a 'substantification' of every procedural issue.

D. <u>Section 70-a Engages in Reverse Commandeering of Federal Courts and Plaintiffs</u>

The anti-commandeering doctrine prohibits the federal government from compelling states to enforce federal law, see *Murphy v. NCAA*, 584 U.S. 453 (2018). In reverse, states cannot commandeer federal entities. Section 70-a does so by subjecting federal court dismissals to state remedies, effectively forcing federal courts to anticipate state liability in rulings and compelling federal plaintiffs to face state procedures post-dismissal. This "reverse commandeering" undermines federal sovereignty, as states cannot dictate consequences for federal proceedings and thereby control them.

Federal courts, even despite the Anti-Injunction Act, 28 U.S.C. § 2283 may ensure the finality of their own proceedings, and protect their own proper jurisdiction and independence by commanding state courts to stay or surrender jurisdiction as to certain matters. For example, in *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) this was endorsed with respect to protecting the finality of prior judgments issued according to federal procedures. Such an exercise of power was also endorsed when necessary in aid of federal jurisdiction in *Kline v. Burke Construction Co.*, 260 U.S. 226 (1922).

E. <u>The Societal Value of Defamation Actions Underscores the Unconstitutionality of Section 70-a</u>

Defamation suits, including *per se* categories (e.g., imputing crime or loathsome disease), serve vital social purposes by enabling truth-proving through evidentiary rules, fostering accountability in discourse. They deter falsehoods while allowing defenses like truth, promoting societal trust. Section 70-a undermines this by chilling such actions when they touch public interests, depriving society of judicial truth-finding mechanisms essential to democratic debate. Even indigent plaintiffs who are injured by defamation, and can show no economic injury are still entitled to correct the record relating to the most fundamental truths necessary to allow them to participate, even minimally, in society such as their not being criminals or possessing "loathsome diseases".

According to its own terms, 70-a purports to recognize and protect "public petition", yet all of its remedies are crafted solely to protect speakers and publishers, but never petitioners, and are in fact squarely against those who petition in relation to public matters.

F. <u>Even According to its Own Terms Section 70-a Does Not Apply in Response to Finkelman I</u>

There are no facts that could be alleged or arguments brought that could demonstrate that the plaintiff's earlier action Finkelman I was "commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law". According to the standard set forth by the Second Circuit in *Harris v. American Accounting Association* 2023 WL 2803770 (2023), which did not decide in that action whether or not 70-a would apply to a federal dismissal, the absence of a substantial argument in Finkelman I cannot be demonstrated. The Second Circuit stated: "[The state] law is unclear in several respects. We are therefore not persuaded that Harris's reverse passing off claim, when viewed with the indulgence afforded to pro se litigants, was wholly 'without a substantial basis in fact and law' and incapable of being 'supported by a substantial argument for extension, modification or reversal of existing law,' as the statute requires." (citing *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 29 (1st Dep't 2022)).

There are no facts that could be alleged or arguments brought that could demonstrate the earlier action Finkelman I "was commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights".

There are no facts that could be alleged or arguments brought that could demonstrate that the earlier action Finkelman I "was commenced or continued for the sole purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights".

## CONCLUSION

For the foregoing reasons, the Court should declare § 70-a unconstitutional, inapplicable to the plaintiff, and grant declaratory relief.

Respectfully submitted,

/s/ Gideon Rapaport *pro se*
GideonRapaportLaw@outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07307

## APPENDIX A

<u>Local Rule 56.1 Factual Statement</u>

1.      The plaintiff of this action and Finkelman I, Gideon Rapaport, had a substantial basis in fact to commence and continue the related Finkelman I.

2.      The plaintiff of this action and Finkelman I, Gideon Rapaport, never had any purpose of "harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights" of defendant Finkelman by litigation or any other means.

/s/ Gideon Rapaport

September 16, 2025